Our next case this morning is number 21-2140, John Doe1 versus United States. Mr. Hinchelwood? Good morning, Your Honors. And may it please the Court, Brad Hinchelwood for the United States. If I may, I'd like to reserve five minutes in my time for rebuttal. You may, please. Thank you. Plaintiffs here allege the government violated their right to timely contributions to the TSP, and they seek a particular form of money damages remedy, lost investment earnings, to compensate for that violation. The text of the relevant provisions say nothing about such damages. And when the statute was enacted, it was uniformly understood not to provide for lost earnings. That is why Congress needed to add a remedy for that in subsequent amendments. And the amendments Congress enacted provided for such damages only in limited circumstances that all agree do not apply here. So those points alone, I think, suffice to demonstrate that plaintiffs cannot obtain the sort of damages they're seeking here. But that point is underscored by bedrock principles of sovereign immunity, which require that there be a separate waiver of immunity for each form of damages that a plaintiff seeks. And no express waiver is present here. And I would just ask that underscoring point. It sounds like you're arguing that the questions related to sovereign immunity and waiver don't really come into play if the best ordinary reading of FERSA itself suggests that there is no right that can be actionable. So if we find, as you began your argument with, that there is no right to the contribution that they're seeking, then does sovereign immunity ever enter the picture? And are we done? I certainly think you could conclude from the text of the statute that lost earnings is not contemplated, particularly where Congress has enacted subsequently an amendment that addresses that, provides for that in circumstances that aren't applicable here. But commonly, courts will incorporate the sovereign immunity analysis into their thinking on a particular case. And we think you could take that approach here as well. But under either approach, we think the answer is the same, which is that the statute simply does not provide for lost earnings. What it specifies is that participants in the program receive contributions in a set amount of their pay. Yeah, I know courts sometimes do that. But I had sort of seen a, I was wondering if there is a sharper distinction in the Supreme Court's guidance on how to think about sovereign immunity in that you don't look to the questions of what the sovereign wants, irrespective, related to its rights, until you understand what's at issue in the claim. And that if you blend the two together, you're going to wind up shifting the presumptions and applying a different lens of, perhaps, statutory interpretation than you might otherwise do. I thought the cases, going back to White Mountain, were setting up a cleaner distinction between the two doctrines for the very purpose of making sure that the kind of super important interest that is the sovereign's prerogative to withhold consent isn't bleeding into the consideration of what the statute's meaning. I think White Mountain Apache and cases in that line are just very different from what we're talking about here. The issue in cases like White Mountain Apache is essentially whether the government is required to pay money at all under any circumstances. So the White Mountain Apache, there's the Indian Tucker Act, comparable to the regular Tucker Act, under which there's a waiver of immunity. And the question there is, well, does the trust relationship with the tribe establish a requirement for the government to pay anything at all? But what you're talking about in cases like this, just like in cases like Cooper or Lane versus Pena or something else, here there's no question that the government is required to pay some money in certain circumstances. The government is required to make the contributions that the statute specifies in terms of percentage of basic pay. The question here is whether you can get a particular form of consequential damages if the government fails to make those payments on time. And that's exactly the sort of question. I'm sorry. No, no, no. No, I was picking up your stream of thought. I mean, what you're saying basically is right into the FAA Cooper, the sort of like, look, once we do that, then we're in Cooper space. But airspace, if you will, since it was FAA. But I guess the thought that I have is really we've got this 8477E3C1, right? That's in, I just am curious in terms of how you conceive of that provision. Do you think that's a waiver of sovereign immunity? And do you think that creates a cause of action? Yes. So it does both of those things. And the cause of action and the waiver of sovereign immunity, they're distinct. But they work towards kind of the same end. The point of those is to recover benefit, right? Yeah, recover benefits or enforce a right. Right, right, right. But the recover benefits is kind of where the action is here. Because it really depends on how we conceive of benefits. And I think we have two options for conceiving of benefits. One is it's the sum of money owed, right? That's a legitimate way to conceive it. It's a benefit. The other is sum plus timing. And so if the benefit is to get this sum within a certain amount of time, and that 8432 first section, I think A1, I'm going to guess, links sum with timing. And so if we conceive of benefits is that second kind of notion, that it's sum plus timing, then don't we have a cause of action with a waiver of sovereign immunity? No, Your Honor, because I don't think. But if we do, no, go ahead. Certainly, if what you do is conceive, if you just define the benefit as the way the plaintiffs want to define it, then yes. But we don't think you can define the benefit in that way. So if it's conceived as sum plus timing, then plaintiffs have a cause of action within the waiver of sovereign immunity. And so this kind of blurs with Judge Mady's point, which is, hey, where does sovereign immunity fit with cause of action? And I guess sooner or later, these get interconnected. But really, what you have to do to prevail is you have to say that benefits means only sum, not sum plus timing, right? Certainly, Your Honor. What the statute sets out is a requirement that the agency pay a specific amount of money. And it has to be a certain amount of time. It says that too. I'm getting there. The statute also gives out the timing requirement, right? And the question here is, what happens if the government misses that timing requirement, right? And so that sort of question is a textbook consequential damages type question, right? It's not something that necessarily will flow from the government. Lost earnings is not something that will necessarily flow from the government's failure to make the payments within the 12-day period. That's why it's a textbook consequential damages question. And it's one that pushes us, as the district court recognized and as plaintiffs have repeatedly said in describing this as damages, that this is a claim for a particular form of damages. I think another way of putting Judge Phipps's point, which is the heart is, if we agree we're not in Tucker Act, a little Tucker Act territory, we're not under fair interpretation, we're in 8477E3C1, and we have this right to recover benefits. I think plaintiffs want benefits, the noun to be this sum of money and this amount of promptness. Whereas you want to understand the what, the noun as the benefits, and the timing of payment to be the how or the when. It's adverbial. It's not an object you have a right, at least the government has given you the right to sue for. Is that another way of phrasing your point, that the word benefit does not capture the timing requirement here? I think that's one way of putting it. I mean, certainly there are circumstances where you could sue to enforce the 12-day requirement. So if you imagine some agency just says, look, we're going to pay monthly because it's easier. You could sue to obtain, for example, injunctive relief to try and enforce that requirement. But that's very different from saying, well, because you missed the 12-day requirement, I necessarily have a money damages remedy for your failure to comply with that requirement. It's not a benefit. Correct. It's not a benefit. It's a form of damages. And that's the way it was understood from the beginning. That's why Congress had to enact a separate provision, 8432A, to address circumstances and provide for the payment of lost earnings. I mean, that's why Congress enacted 8432A, to address situations where an agency pays late, and as a result, there are lost earnings, when the late payment is the result of an agency error. Without that provision, there would be no recovery for lost earnings. That's why Congress had to enact it. I mean, plaintiff's theory is that that amendment was essentially superfluous, that there was no reason for Congress to have ever enacted that provision because this was already baked into the statute from the start. That's their view. But that really makes nonsense of Congress's specific amendment in 1990. Isn't another reading of that amendment that it treated agency errors different from all other denial of benefits sort of situations and gave agency errors a 30-day window, whereas everything else might have been maybe less 30-day? I mean, I guess there's one notion to say that one interpretation of that amendment is it validated plaintiff's theory and gave special treatment to agency errors, a little more lenient treatment to agency errors, just because every now and then agencies get clunky in their administration, and then we're 30 days later, and so only when you fell off 30 days was there a problem. I mean, isn't that, I mean, it's not one that plaintiffs necessarily advocate, but when we're kind of in this already hazy zone of interpreting a prior statute based on a later amendment, that's also a valid kind of inference that you can make, maybe not one that's persuasive, but isn't that at least legitimate inference? Your Honor, I think that that reading, A, the 30-day requirement comes from the regulations, not from the statute itself, so it's not something Congress itself put in, but even then, I think it would require just ignoring all of the history that predated that amendment. I mean, it would require ignoring the fact that from the beginning, the TSP, the board which administers the TSP, understood and promulgated regulations making clear lost earnings were not available under FERSA, and that the Comptroller General had subsequently made clear lost earnings weren't available under any other federal statute either. So, I mean, I think you'd have to ignore all of that backdrop and conclude that. So, it's not a good inference to make, is what you're saying? It could make the inference, maybe if the backdrop were different, but hard, hard, hard to make here. If courts or the agency had previously said, yes, lots of lost earnings, agency errors are no different, and then Congress had restricted it, that might be an inference you could draw, but it's just totally contrary to the history here. And really, I mean, contrary to the general structure of what happens in these cases, right? I mean, where you have these sorts of requests for consequential damages, you really do need to show, you know, whether you think of it as sort of an initial question, or as a matter of waiving sovereign immunity, that Congress has spoken to this issue. And, you know, where it spoke to this issue was in 8432A, and it didn't extend that remedy to circumstances like these. If there are no further questions, I'll reserve time for rebuttal. Reserve your time for rebuttal, go ahead. Thank you, Your Honors. Okay. Mr. Lindenfeld, when you're ready. Good morning, Your Honors. May it please the Court, my name is Jonathan Lindenfeld. I represent the Plaintiffs' Appellees in this case. This Court should affirm the District Court's decision finding that the retirement benefits provided by Congress in section 8432 of FERSA includes a timeliness requirement, which may give a rise to claims for lost earning, which falls within section 8477's Express Waiver of Sovereign Immunity. 8432 provides that certain amount of retirement benefits must be provided to Congress to federal employees within 12 days of a given pay period. This timeliness requirement is an integral part of this benefit and cannot be separated from its other statutes. The District Court recognized that to separate this 12-day requirement from the other benefits provided in the same statute would contravene the natural reading of the statute. The government tries to separate these two factors, the timeliness portion of the benefit with the specified amount of the benefit. And this position not only contravenes the natural reading of the law, but it actually contradicts in a statement made by the House in passing the 19- Why do you have to bifurcate? I just want to be sure I follow that argument. Why can't you read the 12-day contribution requirement as enforceable in that it gives the beneficiaries a right to the contributory amount within 12 days, meaning somewhere, say, around the 13th day, you now have, assuming the waiver applies, which we discussed how it would, you now have the ability to enforce that promise. So why does that read it out of the statute just to read it that way? When it comes to retirement benefits, timeliness is an important factor of the benefit. A delayed in retirement contribution for a year or for however long it would take the government to provide this benefit would eviscerate a key aspect of the benefit, which is designed to- Well, I mean, but we don't know any of that, right? I mean, I'm not sure, where do you get all of that from, from First's language? I mean, C1a and C2a certainly don't go into that theory. And obviously we can come up with other theories such as the automatic match of contribution, the automatic deduction. That has its own financial benefit to incentivize savings. So we can speculate as to why it was designed this way, but help me understand how that is read into no later than 12 days at the end of each pay period in order to get to the, I think, where you want to go. Well, I think you need to read the section in its totality, which clearly includes the time requirement and it includes money mandating language, but I would direct the court to the House Report 101-452, in which the House Committee states that it believes that, quote, lost earnings are clearly a right or a benefit to which the participant is entitled, end quote, and for which a participant may seek relief under 8477. So let me just ask you this question, right? We have, I think, an ambiguity here, okay, as to what benefits me, right? Now, the government has a really good case, maybe a few, maybe has an arsenal of really good cases in its favor that says waivers of sovereign immunity have to be strictly construed. And I think the strongest case, at least for me, is this FAA v. Cooper, which then talks about different types of damages and different types of remedies that are available. It says we're even going to strictly construe those, right? And so that works a little bit, maybe a lot, against you, right, for how we're going to read this ambiguity. But let me give the good with the bad here. That was the bad, let me give the good. But we also have this doctrine floating around called the Fair Interpretation Rule. And so why isn't your argument that, hey, look, once we recognize that 8477C1 gives us a right to claim benefits, I want a fair interpretation of what benefits mean. I don't want to strictly construe that. I want just a fair interpretation of what that means. And so why isn't your strongest argument, the Fair Interpretation Rule, where you say it's ambiguous, and I want a fair interpretation. And I think it is a fair interpretation that it means what I'm calling sum plus timing. So to me, it's the ambiguity, and then we've got this tension between FAA v. Cooper and the Fair Interpretation Rule. Why does the, my question, to put a point on it, is why does the Fair Interpretation Rule win, if you think it, if you like that theory? Well, I agree that it is this conflict. And I think under both analysis, we would still prevail in that the statute, its ordinary meaning supported by the House report shows that the benefit includes the timeliness aspect of the benefit. And with regard to FAA v. Cooper, I don't, the FAA v. Cooper addressed the waiver of sovereign meaning with respect to damages. It's a bit of a unique situation in the way that that statute, the applicable statute was written. Here, it is indisputed that we, that 8477 applies for the waiver of claims seeking to enforce and recover benefits. That strict interpretation only applies to 8477, which is the waiver statute. In regards to the rights-providing statute, I think to Judge Phipps' point earlier of 8432A of what is a benefit included in this express waiver, that is a much lower standard. The statute need only be reasonably amenable. I don't see that because this Fair Interpretation Rule comes from the Tucker Act, but in Maine Community Health, the court said, if there's a law that assertedly imposes monetary liability on the U.S. and it contains its own judicial remedies, the plaintiff can't rely on the Fair Interpretation Test from the Tucker Act. Instead, it has to stick to the statute here, FERSA's own text. So I don't see how you get the Fair Interpretation Rule in here. Well, respectfully, there is no applicable statute in this case. 8432A does not apply. It's a, it's an amendment that was added after the fact of FERSA's passing. It was designed to address administrative errors. If you look- I think Judge Bebus made a C1A and C2A apply. Yes, subsection A, not 32A, the amendment A. I think he was going, is that right? I apologize, Judge. Do you mind repeating your question? Yeah, so my point is just that we're not, I'm not talking about the errors or omissions provision, just the general right to have the payments, the C1A, you know, no later than 12 days, you got to make this payment. You have to be relying on 8432C1A here. That's the heart of your case, right? That's part of FERSA. Yes. FERSA has 8477, you know, it has the right to sue for the benefits. It has its own remedies here. So we don't go to the Tucker Act. I agree, the Tucker Act- And we don't use the Tucker Act's Fair Interpretation Test. I would disagree with that. The Tucker Act's, the purpose of looking at the Tucker Act cases is to analyze cases where there has been a waiver of sovereign immunity for a certain type of claim. It is not specifically limited to 8477, and if, and here- What do you say about Maine Community Health saying that's for statutes that don't provide their own remedies? And FERSA here has remedies in it. FERSA lets you sue to recover the benefits. It lets you recover certain benefits arising from administrative errors. If you look at the legislative history- Yeah, see, that's, and I, because I want to just, Caleb, if I'm understanding your argument, you're saying 847, 8477E3 says you get to sue to recover the benefits. It's not just the benefits. It's the benefits under the provisions of subchapter, which is FERSA. Okay, so what's the benefits? We have to go over and look at FERSA. Well, FERSA tells us there's two benefits, the 1% and the 12 days. Is your next answer to how it is that FERSA creates the benefit that is applicable under 8477E, the house report? And it, because I haven't heard anything beyond that other than why that language creates the right you're seeking to enforce. That's all I've heard as to what does it. We would argue that the 8432 is the rights-creating statute in its totality. But where in the language does it create? Assume we're- Where it uses, so to Maine Community Health, where it, where the statute utilizes money-mandating languages, which this statute does, where it states that the government shall make a contribution within 12 days. What's the outer lines of that theory then? Because you're saying money plus time equals the accretion of benefit, the accretion of wealth that would have existed in the TSP had it been made. Are there, do you see, is that where the line gets drawn? Or if one particular member of the TSP wanted during that period to withdraw some of their funds to pursue the financially advantageous opportunity, which they've lost out on because they didn't have the funds because you didn't make a contribution, is the government liable for that value as well? No, because that would lead to consequent, true consequential damages. Whereas here we're focusing just on the benefit provided, which is- Okay, so it's- Which is the benefit within 12 days. Consequential damages and true consequences. Yes, exactly. Okay. So let me just tease this out though. If you start to tether benefits as some, as not just some, but some plus timing, right? We're here because the markets went up with the timing. Would that mean though, don't you have to in order to embrace your theory, admit that if the markets had gone down, then the only benefits that you would be owed would be under a sum plus timing theory, a reduction of the amount that the markets went down by, and that's all that would be owed? You can't really say benefits equal sum plus timing without again, taking the good with the bad. And the bad would be markets went down. Government owes you less. That seems like a necessary consequence of your interpretation of benefits. I agree that that would be consistent. That hasn't been raised in the papers because that's not the case before us. But it's a consequence of your interpretation. Yes, yes. We don't think it is reasonable that plaintiffs would not be entitled to a windfall. So I mean, what's really, so I mean, now your case has real consequence because your clients would win because the markets went up, but if the next appropriation lapse, all the markets go down, a lot of clients lose, or not your clients, and then we might get a suit, maybe in another circuit if we go your way, that says no, benefits just mean benefits and we want the amount. So it's a very consequential reading of benefits if we had built in the timing. So too, if the government makes its now delinquent contribution on days 13, 15, and 17 by the vagaries of the appropriation, then I would assume you would say, well, those plaintiffs are gonna then have different quantums of recovery based on where the market was at the time. Yeah, exactly. And I think that would potentially relate to issues in the case later on down the road, but should not impact their entitlement. Thank you, your honors. Here's just a couple of quick points. I'd like to actually pick up right where you left off with my colleague, which is, it is certainly the implication of plaintiff's theory that the benefit is, would necessarily go down. In other words, the government would not be required to make the payments specified in the statute, the one in 5% contributions, if their theory of what the benefit is here is correct. Now, we don't think that's true. We think the agency is required to make that contribution, regardless of what happens in the markets, because the contribution is set and defined by the statute. And I think that really underscores why it's not sensible to talk about what this sort of timing plus the money as the benefit in this case, and why, I mean, my colleague was up here trying to distinguish between true consequential damages and consequential damages. That distinction is simply illusory. And what we're talking about here is consequential damages. The reason that they're here is because the market happened to go up. That is a textbook sort of consequential damage. And that's something for which an explicit waiver of sovereign immunity is required. We've pointed to other indications in our brief for why we don't think linking the timing and the benefit, treating the timing as part of the benefit makes sense. I mean, the fact that you can pay employees at different times, we sort of sketched all this out. But the sort of one-way ratchet point, I think really underscores why it doesn't make sense to talk about it as a benefit in this context. It's really a form of damages. It's what plaintiffs described it as in multiple points in their complaints in the district court and it's how the district court itself described what was happening here. And that's exactly why we're in the bucket of Cooper and Lane versus Pena in cases of that nature. I'm happy to talk about reasons why I think even if you thought for some reason we were in the White Mountain Apache fair inference, fair reading bucket, why we would still win even under that interpretation. One thing the Supreme Court has made clear is that even there, where there are specific reasons to think you need a specific statement from Congress, to show that a particular type of money is required, damages are required, you would still apply a sort of clear statement rule. We cited the case Teston in our brief that as an example of this, that the court in White Mountain Apache cites as an example of a situation where you demand a clearer statement from Congress in order to authorize or require the payment of money. And that's exactly the sort of situation we have here where Congress... Do you think the fair interpretation rules limited the Tucker Act and the Indian Tucker Act? I'm not aware of a case in which it's been applied outside the context of the Tucker Act. Certainly plaintiffs I don't think have cited such a case. But I do think in this circumstance, at a minimum, what needs to happen is plaintiffs need to show that when Congress created this statute and then subsequently amended it to provide this particular remedy and limited that remedy to circumstances that don't apply here, they would have to show that the correct reading of the statute was that that amendment was superfluous. And I don't think they can do that. What do you think the phrase fair interpretation means? Different than ordinary interpretation of the statute using the general tools of interpretation. I mean, is it some sort of, well, I can conceive of it standard that would then conflict with every other Canada statutory construction. How do you see that? I don't think it's inconsistent with other principles of statutory interpretation. I don't think it's one that, you know, you have to sort of apply some different rule. I think it's just reflecting the fact that there you aren't, you know, sort of placing a thumb on the scale. So it's not like the FAA versus Cooper, like let's read it all strictly in favor of the government. That seems to be the big difference. Exactly. So it's a reset. It's a reset away from the clear statement rule to just ordinary principles of statutory construction. We don't read them with the same, I think what the court has said, we don't read them with the same strictness that we read, you know, other waivers of sovereign immunity. Because the sovereign are not at stake when you're in the interpretation of the statute. It's only when you get to the waiver that you might have to consider what interests government is reserving to itself before it consents to the suit. I think that that's one way to think about it, Your Honor, yes. I mean, but, you know, for purposes of this case, you know, I think given all we've discussed today about, you know, how these, what plaintiffs want here, the fact that what they want is a type of damages that only arises in certain circumstances if the market happens to go up that isn't specified in the statute, which talks about, you know, contributions in terms of fixed dollar amounts based on pay. What we're talking about here is a claim for a particular sort of damages. And that sort of claim is one that is squarely controlled by cases like Cooper and Pena. So let me just ask one question about order of operations. Is, do you view sovereign immunity as jurisdictional? And if so, should we address that first before we address kind of the merits of whether there's a claim? Or is it not jurisdictional and it's just threshold and we can address merits of claim at the same time as sovereign immunity? Well, waiver of sovereign immunity, you know, dictates the scope of a court's jurisdiction to entertain a particular suit. I mean, this court has said that, Supreme Court has said that, you know, and I think, you know, ordinarily you would start by saying, you know, look, are these consequential damages? They plainly are. I mean, I don't think there's a real distinction between consequential damages and true consequential damages. They're consequential damages. Is there a waiver for those damages in statute? The answer is no. I mean, there's a waiver as to those sorts of, those sorts of recoveries and other circumstances that aren't present here. But there isn't for this circumstance where the loss is not the result of agency error. Thank you, Your Honors. We thank counsel for their arguments. We'll take the matter under review.